RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0073p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

KENNETH O. KENNEDY,

           *Plaintiff-Appellee,*

    *v.*

CITY OF VILLA HILLS, KENTUCKY et al.,

                    *Defendants,*

JOSEPH SCHUTZMAN, Individually,

                *Defendant-Appellant.*

No. 09-6442

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 07-00122—David L. Bunning, District Judge.

Argued: January 20, 2011

Decided and Filed: March 24, 2011

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jeffrey C. Mando, ADAMS, STEPNER, WOLTERMANN & DUSING, P.L.L.C., Covington, Kentucky, for Appellant. Charles H. Schaffner, Covington, Kentucky, for Appellee. **ON BRIEF:** Jeffrey C. Mando, ADAMS, STEPNER, WOLTERMANN & DUSING, P.L.L.C., Covington, Kentucky, for Appellant. Charles H. Schaffner, Covington, Kentucky, for Appellee.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. Kenneth O. Kennedy was embroiled in a zoning dispute about the expansion of a strip mall next to his home. In May 2005, he approached Joseph Schutzman, a police officer and building inspector, in the Villa

1

Hills city building.  Refusing to speak to Kennedy, Schutzman left the city building. Kennedy told nearby city workers in the building that "that son of a bitch [Schutzman] broke all of the zoning laws."  Schutzman ran back inside and twice asked Kennedy what he had said.  Kennedy then called Schutzman a "fat slob," and Schutzman responded by arresting Kennedy for disorderly conduct.  After the criminal case was resolved in his favor, Kennedy sued several defendants, including Schutzman, alleging various claims, including wrongful and retaliatory arrest.

The district court granted summary judgment to all defendants except Schutzman, who has appealed the district court's denial of qualified immunity.  Viewing the facts favorably to Kennedy, we assume that his outburst was not unreasonably loud and did not threaten to generate public alarm.  Because a reasonable officer could not have believed that he had probable cause to arrest Kennedy under the circumstances that Kennedy has described, we **AFFIRM** the denial of qualified immunity on Kennedy's Fourth Amendment claim of wrongful arrest.  Moreover, because a factfinder could determine that the personal insults motivated Schutzman to arrest Kennedy, we also **AFFIRM** the denial of qualified immunity on Kennedy's First Amendment claim of retaliatory arrest.  Accordingly, we **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Since 1989, Kennedy has lived at 2821 Amsterdam Road in Villa Hills, Kentucky.  Although he had assumed that the property was zoned for residential use, it is apparently zoned instead for commercial use.  Kennedy learned of the zoning problem when an abutting strip mall announced its plan to expand.  The strip mall obtained a building permit from Joseph Schutzman, who is both a police officer and a building inspector for the City of Villa Hills, Kentucky ("City").  In December 2004, Kennedy briefly conversed with Schutzman by phone to express opposition to the project.  Later, Kennedy sued the strip mall's owner, the company from which he purchased his home, and the City in state court.

When bulldozers and construction workers arrived to begin construction on May 18, 2005, Kennedy went to the Villa Hills city building to confront Schutzman. When Kennedy arrived at 7:00 a.m., he stood in the hallway outside Schutzman's office and told Schutzman to "[t]ake your pick, the building [permit] is void or obsolete." R. 22 (Kennedy Dep. at 72). Kennedy's voice "[p]robably" was raised. *Id.* at 73. Schutzman responded that the pending lawsuit prevented him from discussing the issue with Kennedy, and then Schutzman left the building and exited into a parking lot. Still upset, Kennedy spoke with the three city workers who were standing in an adjacent area of the building and who had "probably heard what [Kennedy had] said" to Schutzman. *Id.* at 74. Kennedy told them that "[t]hat son of a bitch broke all of the zoning laws." *Id.* at 78. Kennedy "[p]robably" voiced the insult "rather loudly." *Id.* at 79.

The building was small, and Schutzman presumably overheard Kennedy's comment because Schutzman "came running back in[side]," "got in [Kennedy's] face," and asked Kennedy twice what he had said. *Id.* "You're a fat slob," Kennedy responded, "probably" yelling. *Id.* at 78, 80. Schutzman arrested Kennedy for disorderly conduct. The citation that Schutzman wrote mentions "verbal abuse in front of public works employees" and describes Kennedy as "highly agitated," but it does not mention how loudly Kennedy spoke. R. 22-4 (Citation). It also observed that the "building was not open for business." *Id.*

Kennedy first brought suit for his arrest in Kenton Circuit Court on May 8, 2006. The defendants removed the case to the United States District Court for the Eastern District of Kentucky, which dismissed the civil suit because Kennedy's criminal case was unresolved. On June 18, 2007, the criminal case was dismissed, and Kennedy again sued the City and Schutzman in his individual capacity in Kenton Circuit Court. Kennedy alleged wrongful arrest under the Fourth Amendment, retaliatory arrest in violation of the First Amendment,[1] violations of the Eighth and Fourteenth

---

[1]Although the complaint does not mention the First or Fourth Amendments, Kennedy's allegations fairly raise the claims of wrongful arrest under the Fourth Amendment and of retaliatory arrest for Kennedy's exercise of his First Amendment rights. The complaint alleges that the City, "through its police officer, JOSEPH SCHUTZMAN, because of the Plaintiff's filing suit and pursuing his legitimate claims, retaliated against the Plaintiff by falsely swearing and having him arrested for a misdemeanor

Amendments, and several state-law torts: false arrest/imprisonment, intentional infliction of severe emotional distress, malicious prosecution, defamation (libel and slander), and abuse of process. The defendants once again removed the case to the United States District Court for the Eastern District of Kentucky.

The district court granted summary judgment to the City because a municipality is not liable for the actions of an employee if the employee had no "history of illegal or retaliatory arrests" and the municipality had no reason to suspect that "allowing a police officer to serve as a building inspector would lead to the violation of its citizens' constitutional rights." R. 28 (Dist. Ct. Op. at 7). Schutzman sought summary judgment on the basis of qualified immunity, which the district court denied. With respect to the claim of Fourth Amendment wrongful arrest, the district court reasoned that a jury should resolve the factual dispute about the volume of Kennedy's outburst. With respect to the claim of First Amendment retaliation, the district court identified a question of fact concerning Schutzman's reason for arresting Kennedy. The arrest may have been "motivated by the[] history" of conflict between the two men or "by the content – not the volume – of the speech in question," in which case the arrest was retaliatory and unconstitutional. *Id.* at 13–16. The district court disposed of the remaining state-law and federal constitutional claims on their merits.

Schutzman, the only remaining defendant, has appealed the denial of qualified immunity. Pursuant to the collateral-order doctrine, the district court's denial of qualified immunity to Schutzman is a final order over which this court has appellate jurisdiction. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "Interlocutory review is permitted where a defendant argues merely that his alleged conduct did not violate clearly established law. . . . This is a legal question and is independent from the question

---

charge for which he [JOSEPH SCHUTZMAN] had no credible evidence." R. 1-2 (Compl. ¶ 12 (bracketed text in original)). It also states that Schutzman, "in violation of [§ 1983] . . . , did conspire to harass and intimidate the Plaintiff . . . , thereby depriving him of his constitutional rights, by the use of threats of physical arrest, false imprisonment, force and retaliation." *Id.* at ¶ 18. Finally, it asserts that Schutzman sought "to punish and retaliate against the Plaintiff for his legitimate inquiries and complaints against the [City] and JOSEPH SCHUTZMAN." *Id.* at ¶ 20.

of whether there are triable issues of fact." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

## II.  ANALYSIS

We "review the denial of summary judgment on grounds of qualified immunity *de novo* because application of this doctrine is a question of law.  But to the extent that there is disagreement about the facts, . . . we must review the evidence in the light most favorable to the Plaintiff, taking all inferences in his favor." *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006) (internal citations, quotation marks, and alteration marks removed; ellipses in original), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).  Kennedy bears the burden "to show that [Schutzman] is not entitled to qualified immunity." *Id.* at 498.

"In civil damage actions arising out of government officials' performance of discretionary functions, the officials are generally entitled to qualified immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  *Pearson v. Callahan* recently restated the test for determining whether an official is entitled to qualified immunity.  555 U.S. 223, 129 S. Ct. 808 (2009).  "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 815–16 (internal citations omitted).  After *Pearson*, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

## A.  Fourth Amendment Claim of Wrongful Arrest[2]

For purposes of this appeal, Schutzman concedes that a genuine issue of material fact exists about the amount of noise that Kennedy made, and therefore whether Schutzman violated Kennedy's constitutional right to be free from wrongful arrest.  At stake is the second question:  whether Kennedy's constitutional right to be free from wrongful arrest in these circumstances was clearly established such that Schutzman should have known of it.  We conclude that Kennedy's right was clearly established.

"[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.), *cert. denied*, 554 U.S. 903 (2008). Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.  For Kennedy to defeat qualified immunity, his right "must have been 'clearly established' in a . . . particularized . . . sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  That courts adopt different "verbal formulation[s] of the controlling standard" is irrelevant so long as the conduct that they prohibit is "not distinguishable in a fair way from the facts presented in the case at hand." *Saucier v. Katz*, 533 U.S. 194, 202–03 (2001), *receded from on other grounds by Pearson*, 129 S. Ct. 808.  "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning," and it is not necessary that "the very action in question ha[ve] previously been held unlawful." *Hope v. Pelzer*, 536 U.S.

---

[2]Kennedy's response brief does not expressly challenge Schutzman's request for qualified immunity on the Fourth Amendment claim.  "This court," however, "cannot be forced to reverse the district court due merely to the []appellees' failure to respond to the []appellant's arguments." *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000).  Thus, appellees do not waive claims by failing to respond to appellants' arguments on appeal. *Id.* ("[The cross-appellant] cites cases for the proposition that appellants who do not raise an argument on appeal waive that argument, but he cites no such cases suggesting the same is true for appellees.  Indeed, this court can affirm the district court on any basis supported by the record.").

730, 740–41 (2002) (internal quotation marks omitted).  "[N]otable factual distinctions" between prior decisions and the facts of a case do not resurrect qualified immunity "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."   *Id.* at 740 (internal quotation marks omitted).  "[P]re-existing law" must, however, make "the unlawfulness . . . apparent." *Anderson*, 483 U.S. at 640.

In the context of qualified immunity, preexisting, clearly established law refers to "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (internal quotation marks omitted); *see Pearson*, 129 S. Ct. at 822–23 (finding a doctrine clearly established because three federal courts of appeals and two state supreme courts had unanimously accepted it, even though the circuit in which the conduct occurred had not done so).  At the same time, "'[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.'" *Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).  Put differently, state law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 151–53 (2004) (using constitutional probable-cause standards when a plaintiff had been arrested for an alleged violation of state law and sued under § 1983 for unlawful arrest).

Based on how the Kentucky statute defines disorderly conduct, we conclude that an officer could not reasonably believe that he had probable cause to arrest Kennedy.  The statute provides that "[a] person is guilty of disorderly conduct . . . when[,] in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he," among other options, "[m]akes unreasonable noise."  Ky. Rev. Stat. § 525.060(1)(b).  Commentary to the statute explains that "'[r]easonable' in this context depends upon the time, place, nature[,] and purpose of the noise."  It also clarifies that "public alarm"

is not intended to include conduct which disturbs the peace and quiet of any "one" person. . . . [T]he statute requires public alarm as distinguished from private alarm. For example, *a person may not be arrested for disorderly conduct as a result of activity which annoys only the police.* The statute is not intended to cover the situation in which a private citizen engages in argument with the police so long as the argument proceeds without offensively coarse language or conduct which intentionally or wantonly creates a risk of public disturbance.[3]

Ky. Rev. Stat. § 525.060 cmt. (emphasis added).

Here, the district court found the volume of Kennedy's speech indeterminate in part because the lawyers for the defense pressed Kennedy about the volume of his speech before Kennedy "equivocally agree[d] that his insults to Schutzman were spoken loudly." R. 28 (Dist. Ct. Op. at 11). Although we believe that the structure of the deposition does not make Kennedy's concession any less meaningful, the actual admissions, viewed in Kennedy's favor, were meager. He admitted that he "[p]robably" said "[t]hat son of a bitch broke all of the zoning laws" "rather loudly," and that he "probably did" "yell" when calling Schutzman a "fat slob." R. 22 (Kennedy Dep. at 78–80). Construing these probabilities in the light most favorable to Kennedy, we conclude that a genuine issue of material fact remains about whether Kennedy yelled or spoke loudly at all. Even if he did yell and speak rather loudly, the volume of his voice might not have been unreasonable. Finally, as the commentary to § 525.060 makes clear, Kentucky law does not criminalize arguments and noise that disturb only police officers because such conduct does not risk *public* alarm. *Accord Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) (holding that, under Illinois law, "[p]olice officers must be more thick skinned than the ordinary citizen and . . . must not conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct" (internal quotation marks omitted)). Indeed, because the First Amendment requires that police officers tolerate coarse criticism, the Constitution prohibits states from criminalizing conduct that disturbs solely police officers. *See, e.g.*, *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987) ("[T]he First Amendment protects a significant

---

[3]The latter part of this passage purports to describe subsection (a) of § 525.060(1). However, the phrase that it is describing, "public alarm," is located in a clause that applies to every subsection.

amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, J., concurring) ("[A] properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to fighting words." (internal quotation marks omitted)); *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002) ("It is well-settled that the freedom to criticize public officials and expose their wrongdoing is a fundamental First Amendment value . . . ."). Based on the evidence currently before this court, only city employees heard Kennedy speak and the city building was "not open for business" at the time, R. 22-4 (Citation), which minimizes any risk of public alarm. Given the context of the arrest as Kennedy has portrayed it, a reasonable officer could not conclude that Kennedy's outburst provided probable cause for his arrest.

Cases interpreting Kentucky Revised Statute § 525.060 do not alter this conclusion. This court recently called the case law interpreting the statute "very sparse," *Nails v. Riggs*, 195 F. App'x 303, 311–12 (6th Cir. 2006) (unpublished opinion), and only two Kentucky cases prior to the date of Kennedy's arrest mentioned the unreasonable-noise provision. Neither involved facts similar to Kennedy's circumstances. In *Commonwealth v. Jones*, "a mother, who was accompanied by four infant children," complained to a police officer that the defendant was "shouting obscenities at the military components of [a] parade." 880 S.W.2d 544, 544 (Ky. 1994). The defendant then "called the officer a 'Nazi pig motherfucker'" and was thereupon arrested and charged with disorderly conduct in violation of § 525.060(1)(b) and (d). *Id.* at 545. Following the defendant's criminal conviction and appeal, the Kentucky Supreme Court held that sufficient evidence supported the jury's guilty verdict because the officer had testified that the defendant's "volume of speech [was] greater than a normal speaking voice" and the defendant had admitted that she was "yelling." *Id.* at 545–46. Application of the statute varies by context, and the court reasoned that "[c]ontent, volume[,] and surrounding circumstances may be considered together when

making a determination of reasonableness." *Id.* at 546; *cf. Swiecicki*, 463 F.3d at 499–500 (concluding that an officer lacked probable cause to arrest a fan at a baseball stadium for violating a city ordinance because the venue "encourages fans to cheer and make noise, meaning that loud or even rowdy behavior was commonplace at games"). The risk of public alarm was greater in *Jones* than in this case because here only three city employees—and no members of the public—were present in the city building. The posture of the case also differs: perhaps Kennedy's admissions could support a jury verdict against him, but, in a qualified-immunity analysis at the summary-judgment stage, we are constrained to view the facts favorably to Kennedy. Once we do so, there is no basis on these facts on which an officer could conclude that he had probable cause to arrest Kennedy.

Similarly, in *Collins v. Commonwealth*, No. 2002-CA-001991-MR, 2004 WL 315035, at *1 (Ky. Ct. App. Feb. 20, 2004) (unpublished opinion), the defendant was convicted of disorderly conduct after he "yelled and cursed at his girlfriend to leave the premises" of his trailer and defied officers' repeated requests that he remain in his trailer. The court of appeals affirmed because the defendant had used "offensively coarse language" at 2:39 a.m. in a residential trailer park when "there was no reasonable purpose for the noise." *Id.* In contrast, here Kennedy's outburst was not at night, and it occurred at a city building rather than a residential trailer park. Kennedy used coarse language, and, in light of the preexisting litigation and the instructions that prohibited the city employees from speaking to Kennedy, *see* R. 22 (Kennedy Dep. at 64–65, 72, 75), the exchange was purposeless. Yet Kennedy did not pose the risk of public alarm that Collins did. There were no third parties, such as Collins's girlfriend, whom an arrest would protect. There were also no third parties, such as the other trailer-park residents, whom Kennedy disturbed. In sum, the cases interpreting the unreasonable-noise provision do not show that Kennedy's conduct—viewed in the light most favorable to him—provided probable cause on which to believe that Kennedy had violated Kentucky law.

Finally, the district court observed that "the jury could conclude that Kennedy was arrested for insulting Schutzman as opposed to making 'unreasonable noise.'" R. 28 (Dist. Ct. Op. at 13). Unless discriminatory motive forms part of the cause of action itself, *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988), the question whether a plaintiff's right was clearly established is objective, rendering irrelevant the official's motives, *Mitchell*, 472 U.S. at 517 ("*Harlow v. Fitzgerald*, 457 U.S. 800 (1982), . . . purged qualified immunity doctrine of its subjective components . . . ."). Regardless of why Schutzman made the arrest, the relevant inquiry is whether an officer with no ill will toward Kennedy could have believed that he had probable cause to arrest Kennedy. We answer no, rendering qualified immunity inappropriate on the claim of wrongful arrest. For these reasons, we therefore **AFFIRM** the district court's denial of Schutzman's motion for summary judgment with respect to the Fourth Amendment claim of wrongful arrest.

## B. First Amendment Claim of Retaliatory Arrest

In contrast to its role in the Fourth Amendment context, motive *is* relevant to Kennedy's claim that Schutzman arrested Kennedy in retaliation for Kennedy's exercise of his First Amendment rights.

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.[4]

---

[4]The Sixth Circuit has not decided whether lack of probable cause is an element in wrongful-arrest claims after the Supreme Court's ruling in *Hartman v. Moore*, 547 U.S. 250 (2006), which made lack of probable cause an element for claims of malicious prosecution. *Leonard*, 477 F.3d at 355. *Hartman* was about inducement to prosecute, which involves causal chains that are "usually more complex than . . . in other retaliation cases." *Id.* at 261.

We applied *Hartman* to claims of retaliatory prosecution and wrongful arrest in *Barnes v. Wright*, 449 F.3d 709, 717–20 (6th Cir. 2006). In *Barnes*, *Hartman*'s "concerns regarding the intervening actions of a prosecutor d[id] not apply" to the plaintiff's retaliatory-prosecution claim because the arresting officers initiated grand jury proceedings themselves. *Id.* at 720. Because *Hartman* said that retaliatory-prosecution claims "usually"—not always—involve complex causal chains, however, the absence of probable cause was still an element for the claim of retaliatory prosecution. The absence of probable cause was also an element for the claim of wrongful arrest because that claim was factually interrelated to the allegedly retaliatory prosecution in two ways. First, the arresting agents initiated grand jury proceedings against the plaintiff. Second, they arrested the plaintiff only after the grand jury had indicted him. Thus,

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "A 'motivating factor' is essentially [a] but-for cause . . . ." *Leonard*, 477 F.3d at 355. For purposes of asserting qualified immunity, Schutzman has waived any challenge to the first element by omitting it from his opening brief.[5] *Thaddeus-X*, 175 F.3d at 403 n.18. Schutzman conceded the second element in the district court and has not contested it on appeal. The only question remaining about whether Kennedy's constitutional right was violated is whether Kennedy's speech motivated the arrest. To defeat Schutzman's qualified-immunity defense, Kennedy must also demonstrate that his right to be free from retaliatory arrest in such a context was clearly established.

Because direct evidence of motive is difficult to produce, "claims involving proof of a defendant's intent seldom lend themselves to summary disposition" and "circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment." *Holzemer*, 621 F.3d at 525–26 (internal quotation marks and alterations removed). "Once a plaintiff raises an inference that the defendant's conduct was motivated in part by plaintiff's protected activity, the burden shifts and [the] defendant,'" to obtain summary judgment, must "demonstrate that [he] would have taken the same action in the absence of the protected activity." *Ctr. For Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) (internal quotation marks omitted).

---

*Barnes* governs the applicability of *Hartman* to claims of wrongful arrest only when prosecution and arrest are concomitant.

Unlike the plaintiff in *Barnes*, Kennedy has raised an ordinary retaliation claim. Following the commonplace pattern for allegedly retaliatory arrests, Schutzman arrested Kennedy prior to any prosecutorial or grand jury involvement. The straightforward connection between Schutzman's alleged animus and the arrest that he effectuated suggests that Kennedy may not need to demonstrate a lack of probable cause to succeed on his claim of wrongful arrest. *See, e.g.*, *CarePartners LLC v. Lashway*, 545 F.3d 867, 877 n.7 (9th Cir. 2008) (limiting *Hartman* to retaliatory-prosecution actions in which the absence of probable cause is "need[ed] to 'bridge' a causation gap"). We defer resolution of this question, however, because it does not decide this appeal. If the absence of probable cause is not an element, then, as explained below, Kennedy should prevail because he satisfies the three actual elements. If the absence of probable cause is an element, then Kennedy still should prevail because the Fourth Amendment analysis shows that Schutzman lacked probable cause for the arrest. *See Leonard*, 477 F.3d at 355 (declining to decide whether probable cause is an element for the same reason).

[5]In any event, Kennedy's speech seems to be the type that the First Amendment protects. Even crass language used to insult police officers does not fall within the "very limited" unprotected category of "fighting words." *Greene*, 310 F.3d at 892–93, 896 (holding that a § 1983 plaintiff did not use fighting words when he told a police officer "you're really being [an] asshole" and "if that's how you feel you're really stupid" (alteration in original)).

Schutzman admits that Kennedy was angry with him, but argues that the evidence is silent about Schutzman's own motives. If a *plaintiff's* motives can create an inference about the defendant's motives, then, says Schutzman, plaintiffs could eliminate the defense of qualified immunity simply by threatening a lawsuit before being arrested. We need not address Schutzman's argument because we disagree with Schutzman's interpretation of the record. Kennedy's deposition reveals more than his own anger. Schutzman "came running back in" to the building, "got in [Kennedy's] face," and arrested Kennedy immediately after Kennedy called Schutzman a "fat slob." R. 22 (Kennedy Dep. at 79, 81). At the summary-judgment stage, this evidence suffices to show that the content of Kennedy's speech may have been a motivating factor for Schutzman to arrest Kennedy.

Finally, Kennedy's right to be free from retaliatory arrest after insulting an officer was clearly established. *See Greene*, 310 F.3d at 897 ("[The officer] should have known that an arrest undertaken at least in part as retaliation for a constitutionally protected insult to the officer's dignity would be impermissible unless it could be shown that the officer would have made the arrest even in the absence of any retaliatory motive."); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("[T]he First Amendment right to criticize public officials is well-established . . . . Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."). Motivation may be difficult to ascertain after the fact, but once the factfinder determines that protected speech motivated the arrest, the illegality of the arrest becomes readily "apparent." *Anderson*, 483 U.S. at 640.

### III. CONCLUSION

We **AFFIRM** the district court's denial of qualified immunity to Schutzman on Kennedy's Fourth Amendment claim for wrongful arrest and on his First Amendment claim for retaliatory arrest. We **REMAND** for further proceedings.