NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0208n.06

No. 15-3294

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| D.D., Individually and as Father and Friend on Behalf of S.D. | ) ) ) | **FILED**<br>Apr 14, 2016<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| JAMES SCHEELER, Police Officer Springfield Township Police Department [Badge 246] | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellant | ) ) | |
| and | ) ) | |
| SPRINGFIELD TOWNSHIP, et al. | ) ) | |
| Defendants. | ) ) | |

BEFORE: SILER, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** James Scheeler (Scheeler), a police officer with the Springfield Township Police Department, challenges the district court's denial of his motion for summary judgment on the false arrest claim plaintiff D.D. brought on behalf of his daughter, S.D. Scheeler argues for the first time on appeal that the facts establish he had probable cause to arrest S.D. and is therefore entitled to qualified immunity. We proceed to consider the merits of this claim because its resolution will materially advance the progress of the case. Considering the facts in the light most favorable to the plaintiffs, Scheeler's arrest of S.D. lacked probable cause and was objectively unreasonable.

**I.**

On July 28, 2012, then-fourteen-year-old plaintiff S.D. was attending a church festival with her friend Dana Dawson (Dawson). That night, a fistfight between two boys broke out, and police officers at the festival made an "Officer Needs Assistance" call. Scheeler, on patrol for the Springfield Township Police Department at the time, was among the officers who responded. He arrived at approximately 11:00 P.M. and saw a large crowd containing numerous groups of teenagers.

S.D. recognized one of the boys involved in the fight, and after the police broke it up, she approached a group of officers to tell them what she had witnessed. Because the officers did not listen to her and seemed more focused on getting the two girls to leave the festival, S.D. became irritated. The responding officers, including Scheeler, began walking behind the crowd and asking the festivalgoers to move toward the church parking lot exit.

Scheeler and S.D. disagree about the circumstances of their interaction. Scheeler testified at his deposition that he first encountered S.D. while performing crowd control measures. He noticed that the group she was with was talking loudly and not exiting like the other groups. S.D. drew Scheeler's attention because she was being loud and using vulgar language. He instructed her three or four times to leave the festival, while she continued to use vulgar language and ultimately refused to exit. According to Scheeler, S.D. "was having a three-year-old temper tantrum in the middle of the festival . . . causing people to stop and watch, which hindered the rest of the people in the festival from leaving." R. 21, Scheeler Dep., Page ID 536–37. After advising S.D. that if she did not leave the festival she would be arrested for disorderly conduct, Scheeler arrested her.

S.D., however, testified that when she approached the group of officers to tell them what she had seen, Scheeler instructed her to leave that area. She began walking away, and Scheeler

followed her and Dawson. As she was walking away, S.D. may have said something to Dawson along the lines of "fuck the police," or called the police "useless" or "idiots," but S.D. does not remember whether she was being loud. R. 16, Dep. of S.D., Page ID 170–71. Dawson testified that S.D. was speaking to her and that she did not believe S.D. was speaking loudly enough for Scheeler to hear her. Though S.D. was leaving the festival as instructed, she stopped right before the exit in order to call her sister in order to take her sister home. Scheeler told S.D. to leave, and she said she couldn't until she reached her sister, though she said she was willing to leave as soon as her sister was with her. Scheeler twice asked S.D. to give him her phone and said that he was going to break it if she did not give it to him. He then knocked S.D.'s phone out of her hand, grabbed her left wrist, and put her in his police cruiser. Dawson's deposition testimony corroborates the sequence of events involving the phone, S.D.'s explanation regarding her sister, and the arrest.

S.D. was arrested for disorderly conduct in violation of Ohio Rev. Code § 2917.11(A). This statute provides, in relevant part:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> . . .
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;
>
> (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

Ohio Rev. Code § 2917.11(A). Under Ohio law, to be reckless, a person must act "with heedless indifference to the consequences," in "disregard[ing] a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." *Id.* at § 2901.22(C). S.D.'s resulting juvenile court case was dismissed because she "complete[d] thirty hours of community service . . . and an anger management assessment." R. 22-1, Magistrate Order, Page ID 727.

On July 19, 2013, plaintiff D.D. filed a complaint on behalf of his daughter, S.D., against Scheeler and Springfield Township under 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and Article I, §§ 1, 2, 9 and 14 of the Constitution of the State of Ohio. Among other claims, D.D. alleged that Scheeler's conduct constituted false arrest/imprisonment. The defendants' answer raised, among others, the defenses of qualified and statutory immunity.

The defendants moved on November 17, 2014 for summary judgment. Their motion states that they are "entitled to absolute immunity, qualified immunity, and judgment as a matter of law" and that "Officer Scheeler maintains he is entitled to qualified immunity with respect to Plaintiff's § 1983 claims because his interaction with [S.D] did not constitute any violation of a clearly established constitutional right." R-22, Mot. For Summ. J., Page ID 701–02, 721.

The district court granted the defendants' motion as to all of D.D.'s claims except for the false arrest claim against Scheeler. *D.D. v. Scheeler*, No. 1:13-cv-504, 2015 WL 892387, at *14 (S.D. Ohio Mar. 3, 2015). The court held that Scheeler failed to carry his summary judgment burden by demonstrating that he had probable cause to arrest S.D. *Id.* at *8. Rejecting his argument that the disposition of S.D.'s juvenile court case established probable cause, thus barring her false arrest claim, the district court further noted that "[n]either party further briefed

- 4 -

the issue of whether the facts of this case establish that the Officer had probable cause to arrest S.D. for disorderly conduct." *Id.* The court specifically pointed to Scheeler's failure to address false arrest in his qualified immunity argument and stated that "therefore, the Court will not engage in an independent assessment." *Id.* n.3. Scheeler timely appealed.

## II.

Though "[a] denial of summary judgment on the issue of qualified immunity is immediately appealable," *Cochran v. Gilliam*, 656 F.3d 300, 305 (6th Cir. 2011), our jurisdiction in such cases is limited to pure questions of law. *See Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). Since D.D. and S.D. argue that the district court did not deny Scheeler qualified immunity with regard to the false arrest claim because he never requested it, it is a threshold question whether we have jurisdiction over Scheeler's appeal.

We have jurisdiction to consider the district court's denial of summary judgment because Scheeler broadly argued that he was entitled to qualified immunity on all of S.D.'s claims based on the first prong of the qualified immunity analysis and because his argument that he had probable cause to arrest S.D. is identical to the argument he would make under the first prong of a qualified immunity analysis. When conducting a qualified immunity analysis, we first determine whether the plaintiff has shown that the defendant violated her constitutionally protected right. *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). In the introduction to his motion for summary judgment, Scheeler stated that "he is entitled to qualified immunity with respect to Plaintiff's § 1983 claims because his interaction with [S.D.] did not constitute any violation of a clearly established constitutional right." R. 22, Mot. for Summ. J.,

Page ID 702. Thus, Scheeler based his qualified immunity claim entirely on the argument that he did not violate the Constitution.[1]

Scheeler then argued in the false arrest section of his motion that he had probable cause to arrest S.D. If Scheeler had specifically referred to qualified immunity in the false arrest section of his motion, he would have made the exact same argument under the first step of the qualified immunity analysis as he actually made in the false arrest section of his motion: that his actions did not violate S.D.'s constitutional rights because he had probable cause to arrest her. *See Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) ("To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005))). Therefore, contrary to S.D.'s argument, Scheeler did "come forward with facts" regarding why he is entitled to qualified immunity on the false arrest claim when he both stated that he was entitled to qualified immunity on all claims because he did not violate any of S.D.'s constitutional rights and then provided specific reasons why the arrest in particular did not violate the Constitution. Accordingly, the district court's determination that he did not have probable cause as a matter of law can be immediately appealed because it was in effect a determination that he did not establish as a matter of law that he satisfied the first prong of a qualified immunity analysis.

Additionally, this case can be distinguished from *Mingus v. Butler*, 591 F.3d 474 (6th Cir. 2010). In *Mingus*, the defendant in her answer asserted qualified immunity in response to the plaintiff's Eighth Amendment and Fourteenth Amendment claims, but in her motion for summary judgment, she asserted qualified immunity only with respect to the Eighth Amendment

---

[1] Even in the excessive force section of his motion for summary judgment—in which he specifically engaged in a qualified immunity analysis—Scheeler argued only that his actions did not violate the Constitution and did not argue that the right was not clearly established.

claim. *Id.* at 478, 483–84. Regarding the Fourteenth Amendment claim, she argued only that the plaintiff's claim did not survive rational basis review. *Id.* Based on the general rule that appellate courts do not consider issues raised for the first time on appeal, we held that we lacked jurisdiction to consider the defendant's appeal of the denial of summary judgment on the Fourteenth Amendment claim because the issue of qualified immunity was not properly before the court. *Id.* at 483–84. However, unlike Scheeler, the defendant in *Mingus* did not broadly state in her motion for summary judgment that she was entitled to qualified immunity on all of the plaintiff's constitutional claims because she did not commit any constitutional violation. *See* No. 08-2286, R. 38 (Butler Motion for Summary Judgment).

While the difference between Scheeler's case and Butler's case is close, the fact that Scheeler stated generally that he is entitled to qualified immunity on all claims because he did not commit any constitutional violation permits us to construe the district court's ruling that he did not establish that he had probable cause as a matter of law as effectively ruling that he did not establish as a matter of law that he satisfied the first prong of the qualified immunity analysis for the false arrest claim. Therefore, we have jurisdiction to review the denial of summary judgment on the false arrest claim to the extent that the arguments on appeal do not dispute the district court's determination that a genuine issue of material fact exists. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

**III.**

Scheeler's appeal presents another potential barrier to our review, because he failed to argue to the district court that the facts of the incident with S.D. establish that he had probable cause to arrest her. As the district court noted, "[n]either party further briefed the issue of

whether the facts of this case establish that the Officer had probable cause to arrest S.D." *D.D.*, 2015 WL 892387, at *8. Nonetheless, we may still elect to consider this argument on the merits.

Generally, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). There are certain circumstances, however, permitting departure from the general rule. We may hear new issues involving "exceptional cases or particular circumstances," where application of the general rule "would produce a plain miscarriage of justice," or when considering the unraised issue aids "an over-arching purpose beyond that of arriving at the correct result in an individual case." *In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001) (quoting *Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988); *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993)). In addition, our precedent instructs us to address an issue when it is "presented with sufficient clarity and completeness and its resolution will materially advance the progress of . . . litigation." *Morris*, 260 F.3d at 664 (quoting *Pinney Dock*, 838 F.3d at 1461). Factors relevant to this analysis include the completeness of the briefing and record, the duration of the litigation, and judicial economy. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012); *Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997); *Foster*, 6 F.3d at 407.

Because whether the facts establish probable cause for S.D.'s arrest has been briefed, the factual record does not need expansion, and a decision on the merits will save judicial resources, we proceed to consider the merits of Scheeler's claim.

## IV.

We review *de novo* a district court's denial of summary judgment based on qualified immunity. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 478 (6th Cir. 2014). A court properly grants summary judgment when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, the appellate court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita*, 475 U.S. at 586–87).

Under section 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996); 42 U.S.C. § 1983. Section 1983 claims are subject to the affirmative defense of qualified immunity, which protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to prove that the government official is not entitled to qualified immunity. *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006)). Thus, the government official "is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, the plaintiffs' section 1983 claim alleges false arrest in violation of S.D.'s Fourth Amendment rights. To state a claim of false arrest, a plaintiff must "prove that the arresting officer lacked probable cause to arrest" her. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky*, 412 F.3d at 677). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). The officer can lawfully arrest the plaintiff so long as there is probable cause to arrest her for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). To determine whether Scheeler had probable cause to arrest S.D., we consider the totality of the circumstances and whether what he knew at the moment of arrest was sufficient to lead a prudent person to believe S.D. had committed an offense. *Sykes*, 625 F.3d at 306 (quoting *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002)).

Scheeler alleges two potential crimes he had probable cause to believe S.D. committed: disorderly conduct and obstructing official business. We must examine each of these offenses to determine whether there was probable cause. *See Devenpeck*, 543 U.S. at 153, 155. "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 215 (6th Cir. 2011). Viewing the facts in the light most favorable to the plaintiffs, Scheeler did not have probable cause to arrest S.D. for either of these offenses.

**A.**

First, Scheeler lacked probable cause to arrest S.D. for disorderly conduct under Ohio Rev. Code § 2917.11(A). Scheeler analogizes S.D.'s conduct to two Ohio cases, where one plaintiff "shout[ed] obscenities in a retail establishment in the presence of customers," and another "loudly protest[ed] a driver's arrest and had to be escorted away" twice from the scene of an accident. R. 23, Appellant Br., at 27 (citing *State v. Twyman*, No. 19086, 2002 WL 1483576, at *5 (Ohio Ct. App. July 12, 2002); *State v. Fant*, 607 N.E.2d 548 (Ohio Ct. App. 1992)). The cases Scheeler cites are inapposite. In *Twynman*, an unpublished case, the extremely agitated plaintiff screamed repeated obscenities at a police officer and behaved in such a manner that the police officer thought he was going to assault him. 2002 WL 1483576, at *1–2. In *Fant*, the plaintiff interfered with an arrest in progress. 607 N.E.2d at 549. Under the plaintiffs' version of the facts, S.D. was not speaking to Scheeler or loudly enough for him to hear her, and she simply stood near the festival exit in order to call her sister. This conduct did not give Scheeler probable cause to arrest S.D.

Ohio's disorderly conduct statute and the First Amendment require more than the uttering, or even shouting, of distasteful words. They require that the speech in question constitute "fighting words." *City of Cincinnati v. Karlan*, 314 N.E.2d 162, 164 (Ohio 1974). ("[N]o matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words."). Moreover, there can be no disorderly conduct "[w]here the language is not threatening, does not constitute 'fighting words' and is not likely by its very utterance to inflict injury or provoke the average person to immediate retaliatory breach of peace." *State v. Wood*, 679 N.E.2d 735, 739 (Ohio Ct. App. 1996) (citation omitted).

Police officers are held to a higher standard than average citizens, because the First Amendment requires that they "tolerate coarse criticism." *Kennedy*, 635 F.3d at 216; *see, e.g., City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987) ("The freedom of individuals verbally to oppose or to challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.") In *City of Kent v. Kelley*, the Ohio Supreme Court held that the words "stay away from the fucking door" and "get the fuck out of here" spoken in the presence of a police officer were not fighting words, because they were "not descriptive of a particular person and directed to that person" nor were they "epithets likely to provoke the average person to retaliation." 337 N.E.2d 788, 789–90 (Ohio 1975) (holding that this language did not violate a local disorderly conduct ordinance) (citation omitted).

S.D.'s testimony, corroborated by her friend Dawson, is that she was not addressing Scheeler with her speech. She may have used the word "fuck," but for this word to qualify as a fighting word unprotected by the First Amendment, it must have been personally directed at Scheeler, beyond "coarse criticism," and designed to provoke him. Taking the facts in the light most favorable to S.D., her speech did not satisfy any of these requirements. She spoke to Dawson, not to Scheeler, negating any intent to provoke, and what she said was no worse than the speech protected in *Kelley*. S.D.'s speech did not establish probable cause for her arrest for disorderly conduct.

The next question is whether any other aspect of S.D.'s conduct establishes probable cause for her disorderly conduct arrest. As Scheeler argues, Ohio Rev. Code § 2917.11(A) also prohibits "creating a condition that presents a risk of physical harm to person . . . by any act that serves no lawful and reasonable purpose of the offender." Ohio Rev. Code § 2917.11(A)(5).

"Physical harm to person means any injury, illness, or other physiological impairment, regardless of its gravity or duration." *City of Marion v. McGlothan*, No. 9-77-2, 1977 WL 199588, at *4 (Ohio Ct. App. June 28, 1977). Construing the facts in the light most favorable to S.D., there is no evidence that her remaining at the festival, instead of immediately exiting, created a risk of physical harm to others. Under these facts, Scheeler did not have probable cause to arrest S.D. for disorderly conduct.

**B.**

The Ohio offense of obstructing official business provides for criminal liability for a person who "without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Ohio Rev. Code § 2921.31(A). Thus, the elements of the offense are: "(1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) (citation omitted). With respect to the element of "purpose to obstruct," "[a] person acts purposely when it is his specific intention to cause a certain result." *N. Ridgeville v. Reichbaum*, 677 N.E.2d 1245, 1249 (Ohio Ct. App. 1996). The statute also requires an affirmative act that interrupts police business; "[a] person may not be convicted of the offense simply by doing nothing." *Lyons*, 417 F.3d at 573–74 (citing *State v. McCrone*, 580 N.E.2d 468, 470–71 (Ohio Ct. App. 1989)). The unprivileged act must actually hamper or impede the public official in the performance of his duties, and "there must be some substantial stoppage of the officer's progress." *State v. Wellman*, 879 N.E.2d 215, 219 (Ohio Ct. App. 2007) (citation omitted).

Taking the facts in the light most favorable to the plaintiffs, there is no evidence that S.D. intended to impede Scheeler's crowd control measures by staying within the festival grounds. Rather, S.D. told Scheeler multiple times that she was waiting to leave the festival until she could reach her younger sister and willing to depart as soon as her sister was with her. Because S.D. lacked the purpose of obstructing Scheeler, and she informed him of her reason for remaining at the festival, he lacked probable cause to arrest her for obstructing official business.

## C.

Scheeler argued in his motion for summary judgment and in his appellate brief that the disposition of S.D.'s juvenile court case establishes, as a matter of law, that Scheeler had probable cause to arrest S.D. The documents he cites, however, do not establish that S.D. admitted to or was convicted of disorderly conduct. The district court persuasively distinguished this case from our decision in *Bolden v. City of Euclid*, No. 13-4397, 2014 WL 6871655 (6th Cir. Dec. 8, 2014). The court reasoned that unlike the juvenile in *Bolden* who admitted to his charge, "S.D. did not testify that her completion of [the anger management and community service] criteria and the dismissal of her case constituted an admission of the disorderly conduct charge." *D.D.*, 2015 WL 892387, at *7. We adopt the analysis and conclusions of the district court on this issue.

## V.

The plaintiffs have cleared the first hurdle of the qualified immunity test by showing that, taking the facts in the light most favorable to them, Scheeler violated S.D.'s Fourth Amendment rights by arresting her without probable cause. Scheeler, however, is immune from suit if this constitutional right was not clearly established at the time of her arrest such that it would have been clear to a reasonable officer that Scheeler's conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Since it is "clearly established that arrests without probable cause

violate[] the Constitution," *Parsons*, 533 F.3d 492, 504 (6th Cir. 2008), the key question is whether Scheeler's "actions were objectively unreasonable in light" of S.D.'s Fourth Amendment rights. *Id.* at 503 (quoting *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 310 (6th Cir. 2005)).

Though the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citation omitted), "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 819. It may "seem unduly harsh to have an expectation that law enforcement officers should know the intricacies of criminal statutes"; however, an ignorance of the law defense in the qualified immunity context "might foster ignorance of the law or, at least, encourage feigned ignorance of the law." *Pritchard v. Hamilton Twp. Board of Trs.*, 424 F. App'x 492, 506, 506 n.9 (6th Cir. 2011) (citation omitted).

S.D.'s conduct did not violate either of the statutes Scheeler has proffered. Under the plaintiffs' version of the facts, her speech did not rise to the level of "fighting words" and was not unreasonably loud. S.D.'s failure to leave the festival also did not obstruct official business, because she lacked the required purpose element. Scheeler's arrest of S.D. was unreasonable because no competent officer would have found probable cause to arrest S.D. *See Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) ("We will not grant immunity to a defendant if no reasonably competent peace officer would have found probable cause.") (citation omitted). Scheeler therefore is not entitled to qualified immunity on S.D.'s false arrest claim.

## VI.

Though Scheeler raises a number of other issues, ranging from statutory immunity to punitive damages, we lack jurisdiction over those claims. "Pendent [appellate] jurisdiction *may*

be exercised only when the immunity issues absolutely cannot be resolved without addressing the nonappealable collateral issues." *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 752 (6th Cir. 2015) (quoting *Archie v. Lanier*, 95 F.3d 438, 443 (6th Cir. 1996)). Here, qualified immunity can be resolved without considering these issues, and we have specifically held that an order denying statutory immunity under chapter 2744 of Ohio's Revised Code "does not qualify as a collateral order." *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 605 (6th Cir. 2005).

## VII.

For the foregoing reasons, we affirm the district court's denial of summary judgment on plaintiffs' false arrest claim.

ROGERS, Circuit Judge, concurring.  Except in unusual circumstances not present here, we should not *reverse* a district court judgment based on arguments not raised in the district court.  *Considering* such an argument not raised below can be justified today only because we are not reversing the district court, but rather rejecting the appellant's alternative argument.  Doing so precludes the possibility of a second interlocutory appeal from a district court denial of a second motion for summary judgment.  But this rationale does not extend to situations where we accept the appellant's new argument.  Litigants should understand that our willingness to consider an argument not presented below in this case depends on our contemporaneous determination to reject the argument.