**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0054n.06

**No. 16-3596**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| REGINALD FOLKS, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jan 23, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| AARON PETITT, | ) | |
| | ) | ON APPEAL FROM THE |
| Defendant-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| and | ) | DISTRICT OF OHIO |
| | ) | |
| CITY OF CLEVELAND; JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BEFORE: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

The issue presented in this appeal is whether a police officer violates the clearly established Fourth Amendment rights of a cooperative, non-aggressive driver suspected of having a suspended license by forcibly removing him from his vehicle and slamming him against the windshield. The district court answered "yes," denying defendant Aaron Petitt's motion for summary judgment based on qualified immunity. We agree with the district court and therefore affirm.

I.

Because this is an interlocutory appeal from a decision denying qualified immunity, we accept plaintiff Reginald Folks' version of the facts. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). According to him, on October 27, 2012, Officer Aaron Petitt pulled him over on his morning commute to work. After Petitt approached Folks' vehicle in a "concern[ing]" manner, Folks asked why Petitt stopped him. This appeared to agitate Petitt. Petitt did not answer, but instead asked for Folks' license and registration in an "aggressive" way. Folks handed Petitt his paperwork and again asked why he was being stopped—to no avail. Folks recalled feeling so threatened by Petitt's demeanor and tone of voice that, as Petitt sat in his squad car processing Folks' information, Folks dialed 911. Before Folks could speak with anyone, Petitt began walking back towards Folks' vehicle, prompting him to hang up the phone.

When Petitt returned, he told Folks, "Sign the citation. Your license [is] suspended." Folks replied, "As far as I know, my license [is not] suspended, so I don't feel comfortable signing the citation when I know that my license isn't suspended." According to Folks, "[t]hat's when he called me a smart ass and all heck broke loose." Petitt became aggressive, ordering Folks to "[g]et out of the car now." Folks pleaded with Petitt that "[he] didn't refuse to sign a citation," but simply told him that, as far as he knew, his license was not suspended. Petitt responded, "No, no, no, I've given you a chance," and ordered him to get out of his car. As Folks began to open the door, Petitt grabbed the handle and swung the door open. He forcibly pulled him from the car. He then grabbed Folks by the arms, swung him around, and walked him to the rear of Folks' vehicle. Petitt then pushed Folks face first into his vehicle, causing his face and shoulder to hit the back windshield.

Petitt arrested Folks and transported him to the local police station, where he was detained for seven hours. The following day, Folks went to the hospital, where he was diagnosed with facial, neck, and head contusions. Folks later appeared before the local municipal court on the traffic citation, presenting evidence that his license was not, in fact, suspended on the day of the arrest. The court dismissed the citation.

Folks filed this § 1983 suit against Petitt, as well as his employer, the City of Cleveland, and other unidentified police officers. Relevant to this appeal are Folks' Fourth Amendment excessive-force and state-law assault-and-battery claims against Petitt for pulling him from his vehicle and pushing him into his back windshield. Petitt filed a motion for summary judgment based on qualified immunity, asserting that his actions were a reasonable use of force incident to arrest that caused only minor injuries. The magistrate judge (presiding with consent of the parties) disagreed, holding that it is objectively unreasonable for a police officer to pull a cooperative, nonviolent person from his vehicle and slam him into his vehicle hard enough to produce visible injuries. He therefore denied Petitt's summary judgment motion as it related to these claims.

Petitt appeals.

II.

A.

This is an interlocutory appeal from a decision denying qualified immunity at the summary judgment stage. Summary judgment is proper where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v.*

*Pauly*, 580 U.S. ___, No. 16-67, slip op. at 6 (Jan 9, 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). The qualified immunity analysis contains two components, which courts may analyze in any order: (1) whether the plaintiff has established with the requisite proof the violation of a constitutional right, and (2) whether the particularized right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015). We review the district court's decision on a motion for summary judgment de novo, subject to one caveat applicable here: our jurisdiction to review on interlocutory appeal decisions denying qualified immunity is limited to questions of law only. *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999). We therefore confine ourselves to the legal question of whether, accepting the plaintiff's version of events and all reasonable inferences, he has made out a violation of a clearly established right. *Id*.

B.

Folks claims that Petitt violated his right to be free from excessive force. We analyze such claims under the Fourth Amendment's "objective reasonableness" framework, asking "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) ("[T]he question [is] whether the totality of the circumstances justified a particular sort of search or seizure."). To determine whether a particular seizure is reasonable "we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests

-4-

alleged to justify the intrusion." *Garner*, 471 U.S. at 8 (brackets omitted) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). In so doing, we pay particular attention to three factors:

*Severity of the Crime*. Courts first consider the severity of the alleged crime giving rise to the seizure, *Graham*, 490 U.S. at 396, as it provides the necessary context in which to judge the reasonableness of the officer's actions. Here, the reason for the traffic stop—a citation for having a suspended license—was a relatively trivial matter.

*Actions of the Suspect*. Because a seemingly benign encounter has the potential to devolve into a dangerous one, courts also consider the actions of the suspect, including "whether [he] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Slusher v. Carson*, 540 F.3d 449, 456 (6th Cir. 2008) ("In determining whether force was excessive, we often must assess the actions of the plaintiff."). Folks did not escalate what was otherwise a routine traffic stop into a contentious one. He complied with all of Petitt's commands, promptly pulling over, producing his documentation, and attempting to open the door. He was not verbally aggressive to Petitt, but merely inquired why he was being stopped and, when he was ordered to sign a citation, tried to explain to Petitt that there must be a mistake.

*Actions of the Arresting Officer*. Weighed against the first two factors (which focus on the importance of the governmental interest in justifying the use of force), are the actions of the police officer and "the nature and quality of the intrusion on the individual's Fourth Amendment interests." *Garner*, 471 U.S. at 8 (quoting *Place*, 462 U.S. at 703); *id.* ("[O]ne of the factors is the extent of the intrusion."). In assessing the extent of the intrusion, we must inquire into "how [the seizure] is carried out." *Id*. An officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to

effect it." *Graham*, 490 U.S. at 396. However, that right is not a license to inflict "gratuitous violence." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009). An officer's actions are reasonable precisely to the extent they are justified under the circumstances. This means that an officer's use of force might be excessive even if it "did not leave excessive marks or cause extensive physical damage." *Id.* (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)).

According to Folks, Petitt pulled him out of his car with enough force that Folks did not use his own power to get out—"[i]t was entirely the officer pulling [him] out of the car." Petitt then "became aggressive," grabbed both of Folks' arms, spun him around, and pushed him against the back windshield of his vehicle. Petitt's actions caused visible contusions on Folks' face, neck, and head. Although there is no indication these injuries were severe or permanent, there was also no reason for inflicting them. Put simply, Petitt used significant force to accomplish directives—i.e., exit the vehicle, lean against the vehicle—with which Folks was already complying.

\* \* \*

None of the traditional excessive-force factors weigh in Petitt's favor. He stopped Folks for a minor civil infraction, and Folks was compliant and non-aggressive. Petitt nevertheless pulled Folks from his vehicle and slammed him against his back windshield, causing injuries to his head, neck, and face. We recognize "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 181 F.2d 1026, 1033 (2d Cir. 1973)). But there was nothing "tense, uncertain, [or] rapid[]" about this interaction that would justify a "split-second judgment[]" by Petitt that the force he used was necessary. *Cf. id.* at 396–97. Folks merely

asked why he was being stopped and suggested to Petitt that there must be a mistake—an exchange that has occurred countless times on roadsides across the country without incident. Petitt may have been inconvenienced by Folks' response to receiving the citation, but no reasonable officer would "yank" a citizen from his vehicle when he is already complying with a command to exit the vehicle, nor would such an officer slam him against the vehicle to arrest him if he is not resisting arrest.

Petitt contends that he used a standard law enforcement technique of "pinning" a subject against a stationary object to effectuate a lawful arrest. Whatever label Petitt prefers, a reasonable jury could find that "pinning" a person against a vehicle does not produce contusions on the neck, face, and head unless done so with significant force. In any event, Folks testified that Petitt did not simply "pin" him against his vehicle, but instead "pushed" or "slammed" him hard enough to cause his head to hit the windshield.

Petitt also argues we must evaluate the reasonableness of the "snatching" gesture independently from the "shoving" gesture. Viewed in isolation, he says, neither action amounts to excessive force. In support, he relies on our decision in *Livermore v. Lubelan*, 476 F.3d 397 (6th Cir. 2007), for the proposition that courts "must view each allegation individually focusing on the 'split-second judgments made immediately before the officer used allegedly excessive force.'" Appellant Br., p. 12 (quoting *Livermore*, 476 F.3d at 407). *Livermore* is inapposite here. There, we held that courts must "view excessive force claims in segments" by "first identify[ing] the 'seizure' at issue . . . and then examin[ing] 'whether the force used to effect that seizure was reasonable in the totality of the circumstances, *not whether it was reasonable for the police to create the circumstances*.'" *Livermore*, 476 F.3d at 406 (emphasis added) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996). Unlike the plaintiff in *Livermore*,

Folks does not challenge the reasonableness of Pettit's actions leading up to the seizure. Here, Folks complains of a single seizure, and, according to his deposition testimony, both the "snatch" and the "slam" happened as part of a single, fluid movement before Petitt handcuffed him. Folks did nothing between the moment he was pulled from his car and slammed against his windshield that would alter the analysis of one action independently of the other. And, consistent with *Livermore*'s segmentation analysis, we have limited our inquiry to the moments immediately preceding Petitt's use of force in evaluating the reasonableness of his actions. *Cf. id.* at 407.

Based on the foregoing, we hold that when a suspect is not resisting and not dangerous, it is objectively unreasonable, indeed gratuitous, to forcibly pull him from his car and slam him against it with enough force to cause facial, neck, and head contusions.

This right was clearly established at the time of the incident in 2012. As far back as 1999, this court has held that slamming a compliant, non-resisting suspect into a stationary object during an arrest constitutes excessive force. *See Bass v. Robinson*, 167 F.3d 1041, 1043, 1045–47 (6th Cir. 1999); *see also Carpenter v. Bowling*, 276 F. App'x 423, 425–28 (6th Cir. 2008); *Burden v. Carroll*, 108 F. App'x 291, 293–94 (6th Cir. 2004). Moreover, this court recently held that "pulling a compliant detainee out of her car and throwing her to the ground in the process of handcuffing her is clearly established excessive force." *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015). Based on these decisions, any reasonable officer in Petitt's position would know that his actions were not reasonable under the circumstances. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

III.

Petitt also argues that the district court erred in denying him state-law immunity on Folks' assault and battery claim. Ohio Revised Code § 2744.03(A)(6) provides immunity from tort liability to public employees like Petitt, unless their acts or omissions were (1) "manifestly outside the scope of [their] employment" or (2) done with "malicious purpose, in bad faith, or in a wanton or reckless manner." *See* § 2744.03(A)(6)(a) – (b). Petitt contends that pushing a suspect against a vehicle "to enhance subject control for a solo officer incident to a lawful arrest is certainly not 'outside the scope' of employment as a police officer[,] nor does it show 'malicious purpose' or . . . 'bad faith[.]'" We disagree.

This court has held that evidence of "gratuitous" force for purposes of an excessive force claim is "sufficient to establish a genuine issue of material fact as to whether [the defendant] acted maliciously or in bad faith in striking and arresting [the plaintiff]." *Baker v. City of Hamilton*, 471 F.3d 601, 610 (6th Cir. 2006) (applying § 2744.03(A)(6)(b)). We have also held, in the context of applying Ohio state law, that "[i]f an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery." *D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (ellipsis omitted) (quoting *City of Cincinnati v. Nelson*, No. C-74321, 1975 Ohio App. Lexis 7443, at *5 (Ohio Ct. App. May 5, 1975)). As explained above, forcibly pulling a compliant, non-resisting suspect from his car and slamming him against it with enough force to cause facial, neck, and head contusions is unnecessary—indeed, gratuitous. Moreover, Folks submitted evidence that Petitt's overall demeanor and tone during the exchange was "threatening" and that Petitt called him a "smart ass" immediately before pulling him from his car. Viewing this evidence in the light most

favorable to Folks, a reasonable juror could find that Petitt acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." § 2744.03(A)(6)(b).

IV.

We, of course, make no factual findings in this interlocutory appeal. On remand before the district court, the jury will have the opportunity to determine whether the facts are as Folks alleges. But under the facts as presented by Folks, which we must credit at this stage of our review, no reasonable officer could have concluded that it was lawful to forcibly pull Folks from the driver's seat and slam him against his car in the manner that he describes. We therefore affirm the order of the district court.