**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0468n.06

No. 17-4242

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 13, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BRITTANY OSBERRY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ZANE SLUSHER; AARON MONTGOMERY; | ) | |
| MARK FRYSINGER; KEVIN MARTIN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

Before: COOK, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Brittany Osberry was arrested while carpooling. In August 2016, Osberry drove her car to a friend's house, pulled into the driveway, and parked the car. She was there to pick up her niece and nephew. But within seconds of arriving, three police officers approached her vehicle (one with a gun drawn) and told her to leave. Although she explained that she was just there to pick up the children, the Officers pulled her out of the vehicle (within fourteen seconds of arriving), handcuffed her, and tased her. A bystander caught this entire interaction (totaling less than a minute) on video. The Officers arrested Osberry for obstructing official business, disorderly conduct, and resisting arrest. All charges were eventually dropped, and Osberry filed this lawsuit alleging constitutional violations against the Officers.

In response, the Officers simultaneously filed their answer and moved for judgment on the pleadings. Although the district court dismissed several of Osberry's claims, it declined to dismiss the claims for unlawful arrest, the use of excessive force, assault, and failure to train the Officers. Because we agree—at this early stage of the proceedings—that Osberry's complaint satisfies the relevant pleading requirements and the Officers are not entitled to qualified immunity, we affirm.

## I.

The procedural posture of the case is important here. In response to Osberry's original complaint, the Officers simultaneously filed an answer and a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The Officers attached the civilian captured video of the arrest to the motion. The parties have conducted no discovery. Thus, the limited record before us includes only Osberry's complaint, the Officers' answer, and the video.

## A.

*Osberry's version of the arrest.* On August 10, 2016, City of Lima, Ohio police officers Zane Slusher, Aaron Montgomery, and Mark Frysinger were together on duty. At the same time, Osberry was driving to her friend's house located at 516 South Pine Street. As Osberry pulled into the driveway and parked her black SUV, the Officers approached the vehicle.

Officer Frysinger approached the driver's side of the vehicle with his gun drawn. He yelled at Osberry and told her to leave the scene. In response, Osberry immediately told the Officers that she was at the house to pick up her niece and nephew. Officer Frysinger continued to approach the vehicle and reached into the open driver's side window. Osberry again told the Officers that she was only at the house to pick up the children. Officer Frysinger, however, forcefully removed

2

Osberry from the vehicle. At this point, Officer Montgomery also reached the vehicle and, along with Officer Frysinger, threw Osberry against the side of the vehicle. Osberry repeatedly told the Officers she was pregnant. The third police officer, Officer Slusher, reached the vehicle, joined in restraining Osberry, and tased her in the stomach. The Officers arrested Osberry and charged her with resisting arrest, obstructing official business, and disorderly conduct. All charges were eventually dismissed.

Osberry alleges that, when making these types of arrests, Police Chief Kevin Martin taught the Officers to yell "stop resisting" and "stop obstructing" to imply that any person being arrested was actively resisting the arrest or obstructing official business. Indeed, Chief Martin taught the Officers to file certain criminal charges any time they hurt a person during an arrest. This practice allows the Officers to "over respond to and escalate casual interactions with citizens to allow officers to use excessive and abusive force." (Am. Compl., R. 13 ¶¶ 23–24.) Lima police officers used these tactics in at least six cases between 2012 and 2017.

**B.**

*The Officers' version of the arrest.* The Officers' answer tells a different story. According to the Officers, they were at 516 South Pine Street to investigate an active crime scene. This crime scene involved a barricaded subject who was potentially dangerous. Thus, when Osberry pulled her vehicle into the driveway, the Officers repeatedly told her "in a clear and loud voice" that she was in an active crime scene and needed to leave the premises immediately. But rather than comply, Osberry made "argumentative and/or belligerent statements"—refusing to leave the scene. (Answer, R. 4 ¶¶ 9–10.)

3

This refusal prompted the Officers to arrest Osberry. And once Osberry was under arrest, she "actively and persistently" resisted the Officers by "arguing, yelling, struggling, twisting, and pulling" (even after the Officers told her to stop). (*Id.* ¶ 10.) Further, the Officers claim Osberry did not provide her arms for handcuffing, and instead, struck Officer Montgomery above the eye. According to the Officers, they had probable cause to arrest Osberry and used a reasonable amount of physical force in making the arrest.

## C.

*The civilian-captured video.* A bystander across the street captured what happened on a cell phone. *See* Lima News, *Arrest Dispute with Lima Police* (Oct. 27, 2016), https://www.youtube.com/watch?v=OKJiW1LyiU4. The district court analyzed the video at length, which begins shortly after Osberry pulled into the driveway. Officer Frysinger, as he is approaching the vehicle, yells "you need to leave!"—and Osberry responds, "why do I have to leave?"[1] Officer Frysinger yells again: "You're being disorderly. You need to leave this is a crime scene!" Osberry explains why she is there: "I need to get my nieces and nephews." At this point, only five to seven seconds have elapsed in the video.

Then, as the district court explained, "[e]ight seconds into the video, Officer Frysinger reaches the driver's side door. He orders [Osberry] to 'Show me your hands.' Ten seconds in, he opens the car door for a brief, inaudible exchange." (Order, R. 12 at 2.) And fourteen seconds

---

[1] The audio in the video is not entirely clear. For example, while the district court heard Officer Frysinger yell, "you need to leave this is a crime scene" (Order, R. 12 at 2), a reasonable listener could hear Officer Frysinger yell, "you *can* leave this is a crime scene." But these differences do not change our analysis.

into the video, Officer Frysinger "pulls Osberry out [of the vehicle], forcefully." When being removed, Osberry asks, "Really? Really?"

At this point, Officers Montgomery and Slusher reach the vehicle and help Officer Frysinger arrest Osberry. The Officers position Osberry up against the vehicle, with her face and stomach pressing against the vehicle and her arms behind her back. During this process, Osberry warns the Officers: "you all better know I'm pregnant—you all better know that."

The Officers surround Osberry (who is no longer visible in the video) and appear to struggle with her. The district court could not determine whether Osberry or the Officers were to blame for the scuffle, but explained that seconds later, the "video captures a slight 'pop' [as] Officer Slusher tases Osberry in the stomach." Osberry goes limp for a moment before telling the Officers that they are hurting her during the arrest: "Oh my god . . . Ouch! . . . I'm not doing anything. You all are hurting my arm . . . I'm not, oh my god." Throughout this encounter, the video shows several vehicles passing and people riding bicycles nearby. The video ends with the Officers still surrounding Osberry—completing the arrest.

## II.

Both parties present different and conflicting characterizations of Osberry's arrest. The question thus becomes—at this early stage in the litigation—whose version of the arrest is controlling? The Officers suggest that we should consider their answer as part of the pleadings—and accept their counter-factual allegations as true. The Officers also ask us to consider the video because (apparently if we view the video in their favor) it supports the Officers' version of the arrest and discredits Osberry. Specifically, the Officers argue that the key to this case is that

Osberry invaded an "active crime scene" and resisted arrest, provoking Officer Slusher's use of the taser. Said another way, the Officers argue that, when accepting their characterization of the arrest as true, they did not violate Osberry's rights. The Officers' argument fails for two reasons.

**A.**

First, the Officers—not Osberry—filed the motion for judgment on the pleadings. We review de novo a judgment on the pleadings, using the same standard as a motion to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). This means that "all well-pleaded material allegations of the pleadings *of the opposing party* must be taken as true." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (emphasis added). Here, Osberry is the party opposing the motion—so we construe the complaint in the light most favorable to Osberry, accept her allegations as true, and draw all reasonable inferences in her favor. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 385 (6th Cir. 2017). In contrast, we do not accept the Officers' allegations as true.

But at oral argument, the Officers asked us to accept some allegations in the answer as true because Osberry's complaint fails to contradict all the Officers' counter-allegations. For example, Osberry's complaint is silent on whether there was an "active crime scene"—which the Officers first raised in their answer. The Officers' argument lacks any merit.

Under Rule 7(A), a "plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer." 5C Wright & Miller, Fed. Prac. & Proc. § 1368 (3d ed.) (citing Fed. R. Civ. P. 7(A)). And under Rule 8(b)(6), where new allegations are in a pleading to which no responsive pleading is required, the court must consider the new allegations as denied. *Id.* (citing

Fed. R. Civ. P. 8(b)(6)). In other words, because Osberry did not have to respond to the Officers' answer, we must assume that Osberry denies any new allegations in the answer. And when considering the Officers' motion, we rely on the general Rule 12 standard: "[A]ll of the well pleaded factual allegations in the adversary's pleadings [here, Osberry's complaint] are assumed to be true and all contravening assertions in the movant's pleadings [here, the Officers' answer] are taken to be false." *Id.* Thus, because the Officers moved for judgment on the pleadings (and not vice versa), we must accept Osberry's version of the arrest as true and give her "the benefit of all possible favorable assumptions." *See id.*; *JPMorgan Chase Bank*, 510 F.3d at 581–82.

**B.**

Second, the video can change our analysis but does not do so here. At this stage of the litigation, "our decision rests primarily upon the allegations of the complaint." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). But we have allowed the use of a video when deciding a Rule 12 motion if the video "utterly discredits" the plaintiff's version of events. *Bailey*, 860 F.3d at 386–87 (brackets omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)) (collecting cases from the Second, Fifth, and Seventh Circuits). If "no reasonable jury could watch the video" and agree with the plaintiff, the video "allows us to ignore the 'visible fiction' in his complaint." *Id.* at 386. Said another way, we do not accept a plaintiff's version of an arrest as true (even at this motion to dismiss stage) if a video shows that plaintiff's "pleadings internally contradict verifiable facts central to his claims[ ] that make[ ] his allegations implausible." *Id.* at 387. In

such a situation, the court should not rely on the allegations in the complaint, but should instead "view[ ] the facts in the light depicted by the videotape."[2] *Scott*, 550 U.S. at 380–81.

Here, our review of the video tracks the district court's finding that the video does not "so blatantly and conclusively contradict" the allegations in the complaint that "no reasonable jury could find in [Osberry's] favor." (Order, R. 12 at 4–5, 9 (explaining that the district court was "not bound by defendants' rather inappropriate proffer of their preferred version of the facts")).) For example, the video does not conclusively show that Osberry resisted arrest, hit the Officers, or that she—and not the Officers—provoked the brief scuffle. Likewise, the video does not necessarily show an "active crime scene" or "a barricaded subject." There are no police vehicles, no caution tape, and no blockades or barriers visible in the video that would suggest that Osberry was in an active crime scene. Indeed, the presence of other individuals and vehicles, including several people riding bicycles nearby, would suggest the opposite. And while the presence of many police officers may suggest an ongoing investigation, as could Officer Frysinger instructing

---

[2] Our ability to consider video evidence at the pleading stage apparently finds its roots in Rule 10(c), which instructs that "[a] copy of a *written instrument* that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c) (emphasis added). *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (explaining that Rule 10(c) allows a court to consider "certain pertinent documents" as part of the pleadings); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012) (explaining that it would make "eminently good sense" to extend the Rule 10(c) incorporation-by-reference doctrine to videos). This case, however, does not require us to determine the appropriateness (or limits) of reviewing videos under Rule 10 and Rule 12. *See, e.g.*, Aimee Brown, Comment, *Pleading in Technicolor: When Can Litigants Incorporate Audiovisual Works Into Their Complaints?*, 80 U. Chi. L. Rev. 1269, 1278–1306 (2013).

Osberry that "you need to leave this is a crime scene," these facts alone do not "utterly discredit" Osberry's version of the arrest.

In sum, at this stage, we can rely on the well-pleaded allegations in the complaint and leave further evaluation of the video to either the district court at summary judgment or the jury at trial. This is consistent with our previous warnings "that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal citation and quotation marks omitted). Instead, we clarified that "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)). This is especially true where, as is the case here, "the fact-intensive nature of the applicable tests make it 'difficult for a defendant to claim qualified immunity on the pleadings *before discovery*.'" *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (emphasis original)); 5C Wright & Miller, Fed. Prac. & Proc. § 1368 (explaining that "a summary judgment motion or a full trial"—rather than a Rule 12 motion—should resolve disputed issues of fact).

## III.

Now that we are properly focused on Osberry's complaint and her version of the arrest, we can decide whether the district court's decision was correct. The district court refused to dismiss Osberry's claims for unlawful arrest, excessive force, assault, and failure to train. But the district court also granted the motion in part and dismissed the Fourteenth Amendment claims.

The Officers (and Chief Martin) appeal the former decision denying their motion. Osberry does not cross-appeal the latter decision.

In refusing to dismiss the unlawful arrest claim, the district court found that Osberry sufficiently alleged a violation of her constitutional right—"i.e., that defendants arrested her without probable cause to believe she engaged in disorderly conduct, obstructed official business, or resisted arrest." (Order, R. 12 at 7.) The district court also found that Osberry pleaded sufficient facts to support her excessive force claim because "[i]t is clearly established in this Circuit that 'the use of a Taser on a non-resistant suspect' constitutes excessive force." (*Id.* at 14 (quoting *Kent v. Oakland Cty.*, 810 F.3d 384, 396 (6th Cir. 2016)).) After examining the video, the district court explained that—based on the evidence to be considered at this pleading stage—a jury could find that Osberry posed no immediate threat to the Officers and that she was not resisting or evading arrest before Officer Slusher tased her. Similarly, the district court refused to dismiss the assault claim because a reasonable jury "could find that the officers acted maliciously and recklessly by manhandling and tasing a pregnant woman." (*Id.* at 16.)

Finally, the district court refused to dismiss Osberry's claim against Chief Martin for failing to train the Officers. But in doing so, the district court first granted Osberry's motion to amend her complaint. The amended complaint provides specific case numbers for six previous cases where Lima police officers used the same alleged tactics of "over respond[ing]" in order to "overwhelm and intimidate suspects." (*See id.* at 17–18 (relying on Am. Compl., R. 13 ¶ 25).) We agree with the district court that Osberry sufficiently pleaded her claims for unlawful arrest, excessive force, *Monell* liability, and assault.

10

**IV.**

At the pleading stage here, the ultimate test is whether, reading the complaint in the light most favorable to Osberry, it is plausible that the Officers' acts violated Osberry's clearly established constitutional rights. *See Courtright*, 839 F.3d at 518; *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This is a "two-tiered inquiry" that requires us to (1) "determine if the facts alleged make out a violation of a constitutional right" and (2) "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). While we can address these questions in either order, we must answer both questions in the affirmative for Osberry's complaint to survive. *See id.*

**A.**

*Osberry's unlawful arrest claim.* Osberry claims that the Officers arrested her without probable cause. "The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit." *Courtright*, 839 F.3d at 520 (quoting *Wesley*, 779 F.3d at 428); *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("The law was therefore clearly established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) ("It is beyond doubt that in 2001 'the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.'" (quoting *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th

Cir. 1999))). Thus, at this stage, Osberry has plausibly alleged that the Officers violated her clearly established constitutional right to be free from arrest without probable cause.

Next, to survive the Officers' motion, Osberry must "allege facts that make out a plausible violation of that constitutional right, *i.e.*, that [her] arrest was unsupported by probable cause." *Courtright*, 839 F.3d at 520–21. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons*, 533 F.3d at 501 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)); *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (same).

"A police officer has probable cause for arrest if, at the time the officer makes the arrest, 'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.'" *Courtright*, 839 F.3d at 521 (brackets omitted) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In other words, probable cause exists only when the police officer "discovers reasonably reliable information that the suspect has committed a crime." *Id.* (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). "A probable cause determination is based on the totality of the circumstances, and must take account of both the inculpatory *and* exculpatory evidence then within the knowledge of the arresting officer." *Id.* (internal quotations omitted). "Moreover, the probable-cause determination must be based on the information that the arresting officer had when he made the arrest, 'rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

Here, the Officers arrested Osberry on three charges: (1) obstructing official business, (2) disorderly conduct, and (3) resisting arrest. "We must examine each of these offenses to determine whether there was probable cause." *See D.D. v. Scheeler*, 645 F. App'x 418, 424 (6th Cir. 2016). When viewing the complaint and the video in the light most favorable to Osberry, and accepting her allegations as true, there was no probable cause for the Officers to arrest Osberry on any of these charges.

**1.**

*Obstructing official business.* Under Ohio law, obstructing official business requires: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016) (citing Ohio Rev. Code § 2921.31). Importantly (and dispositive) for us here, "Ohio courts have emphasized the importance of the first element, the requirement that the defendant commit an *affirmative* act." *Id.* (emphasis added). This means that Osberry "cannot be guilty of obstructing official business by doing nothing or failing to act." *Id.* (quoting *State v. Wellman*, 879 N.E.2d 215, 218 (Ohio Ct. App. 2007)).

Further, short of "fighting words," probable cause cannot be based on a defendant's words alone: "Ohio courts have not treated speech alone as an act for purposes of this statute." *Id.*; *D.D.*, 645 F. App'x at 425 ("No matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words." (quoting *City of Cincinnati v. Karlan*, 314 N.E.2d 162, 164 (Ohio

1974))). In short, "a person may not be convicted of the offense simply by doing nothing." *D.D.*, 645 F. App'x at 426 (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005)).

For example, we have found that an officer lacked probable cause to arrest a defendant for obstructing official business where an officer told her to leave a church festival and she refused. *Id.* at 419–20. Following a fistfight between some teenagers, the officer instructed the plaintiff "three or four times to leave the festival." *Id.* at 420. Although the plaintiff began to comply and walked toward the exit, she stopped to call her sister so they could go home together. *Id.* The officer again told the plaintiff to leave, but "she said she couldn't until she reached her sister." *Id.* The officer then twice asked the plaintiff to give him the phone—but she refused—and the officer arrested her. *Id.* We determined that there was no probable cause because she "lacked the purpose of obstructing [the officer], and she informed him of her reason for remaining at the festival." *Id.* at 426. In other words, it was not enough that she failed to comply with the officer's commands to leave because she undertook no additional affirmative act. *See id.*; *see also, e.g.*, *Patrizi v. Huff*, 690 F.3d 459, 465 (6th Cir. 2012); *Rainey v. Patton*, 534 F. App'x 391, 398–99 (6th Cir. 2013).

Likewise, the district court here correctly recognized that a lack of any affirmative act defeats probable cause. The Officers argue that there was probable cause to arrest Osberry because she refused to comply with their orders, failed to leave when commanded, and argued with the Officers. But without more, Osberry's passive responses and failure to immediately leave cannot qualify as affirmative acts under Ohio law. *See Lyons*, 417 F.3d at 574 (collecting cases of sufficient affirmative acts, such as "repeated, prolonged, and profane outbursts"). And regardless, Osberry lacked the purpose of obstructing the Officers. Rather than simply refusing to comply

14

with the Officers' orders, Osberry informed the Officers of her reason for remaining in the driveway—*i.e.*, to pick up her niece and nephew. Thus, Osberry has plausibly alleged that the Officers did not have probable cause to arrest her for obstructing official business.

**2.**

*Disorderly conduct.* Ohio Revised Code § 2917.11 requires two elements to commit disorderly conduct. First, a person must "recklessly cause inconvenience, annoyance, or alarm to another." Ohio Rev. Code § 2917.11(A). Second, the person must cause this disturbance by engaging in specific enumerated conduct, such as fighting, provoking a violent response, hindering or preventing the movement of persons, or creating a physically offensive or harmful condition. *Id.* § 2917.11(A)(1)–(5). The district court correctly resolved this probable cause inquiry on the first prong.

Osberry could only act with the required mental state for this crime—recklessness—if "with heedless indifference to the consequences," she engaged in conduct or speech likely "to inflict injury or provoke the average person to an immediate retaliatory breach of the peace." *See Goodwin v. City of Painesville*, 781 F.3d 314, 333 (6th Cir. 2015) (quoting Ohio Rev. Code § 2901.22(C) and *State v. Hoffman*, 387 N.E.2d 239, 242 (Ohio 1979)). Indeed, for Osberry to act this recklessly, her language and conduct must have been so annoying or alarming that it would have provoked a reasonable officer to want to respond violently. *See id.* (quoting *Warren v. Patrone*, 600 N.E.2d 344, 345 (Ohio Ct. App. 1991)).

Osberry's conduct cannot satisfy this standard. For example, the same conduct in *D.D.* that failed to support probable cause for obstructing official business also failed to support

probable cause for disorderly conduct: "there is no evidence that her remaining at the festival, instead of immediately exiting, created a risk of physical harm to others." *See* 645 F. App'x at 425–26. We have also found probable cause lacking in other situations when a plaintiff refuses to leave a crime scene. *Rainey*, 534 F. App'x at 398–99. In *Rainey*, an officer pulled over a suspect, removed her from her car, and employed a canine unit. *Id.* at 392–93. The plaintiff was riding his scooter nearby. *Id.* at 393. The officer told the plaintiff to leave the scene—but he refused—and the officer cited him for disorderly conduct. *Id.* We refused to dismiss the plaintiff's unlawful arrest claim because the officer lacked probable cause to arrest him. *Id.* at 398–99. We emphasized that the plaintiff's refusal to leave the scene was not an affirmative act—nor was it "reckless" to stand near the crime scene, orally respond to the officer, yet refuse to leave. *Id.* at 397–98.

Similarly, accepting Osberry's allegations as true, a reasonable police officer would not find her conduct reckless or so "annoying or alarming" that the officer would want to respond violently. And it is certainly plausible that the Officers did not have probable cause to arrest Osberry for disorderly conduct where she was sitting in her vehicle, orally responded to the Officers' commands, but did not immediately leave the scene within eight seconds. This conduct is not "heedless indifference" to the Officers or the consequences of her actions. Thus, Osberry has plausibly alleged the Officers did not have probable cause to arrest her for disorderly conduct.

**3.**

*Resisting arrest*. Finally, the Officers could not, as a matter of law, have probable cause to arrest Osberry for resisting arrest where the underlying arrest was not lawful. *See* Ohio Rev. Code § 2921.33(A) ("No person, recklessly or by force, shall resist or interfere with a lawful arrest

16

of the person or another."); *id.* § 2921.33(B)–(C) (same); *Hoover v. Garfield Heights Mun. Court*, 802 F.2d 168, 174 (6th Cir. 1986) ("[W]e conclude that § 2921.33 indeed forbids only resisting a lawful arrest and does not prohibit resisting an unlawful arrest."). This alone defeats the Officers' motion at this stage.

In any event, when viewing the complaint and video in the light most favorable to Osberry, she did not resist arrest. To support a charge of resisting arrest, Ohio law requires that a suspect first act "recklessly or by force." Ohio Rev. Code § 2921.33. Osberry plausibly alleged that she was not acting recklessly—and the video does not conclusively establish that she was using force against the Officers. To find otherwise would require us to ignore Osberry's allegations, and instead accept as true the Officers' allegations that she was "arguing, yelling, twisting, pulling, struggling and ultimately struck Officer Montgomery above the eye." (Appellants' Br. at 4.) But that remains a disputed issue of fact best left for the district court at summary judgment—or the jury at trial. Thus, the Officers are not entitled to qualified immunity on the unlawful arrest claim.

**B.**

*Osberry's excessive force claim.* Osberry claims that the Officers used excessive and unreasonable force when arresting her, including tasing her in the stomach, even though she was not an immediate threat to the Officers and was not actively resisting arrest. In response, the Officers again ask us to accept their version of the arrest as true—that Osberry actively resisted arrest and provoked Officer Slusher's use of the taser.

The excessive force claim depends on whether Osberry was actively resisting arrest. If she was not, the Officers were on notice that applying a taser on a suspect who is not actively resisting

17

arrest violates a clearly established right. *Kent*, 810 F.3d at 396 ("It is clearly established in this Circuit that the use of a Taser on a non-resistant suspect constitutes excessive force." (quotation marks omitted)); *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) ("[The officer] could not reasonably have believed that use of a Taser on a non-resistant subject was lawful.").

But if Osberry was actively resisting arrest, "it is also clearly established that tasing a suspect who 'actively resists arrest and refuses to be handcuffed' does not violate the Fourth Amendment." *Kent*, 810 F.3d at 396 (quoting *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). "[A] simple dichotomy thus emerges: When a suspect actively resists arrest, the police can use a taser . . . to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015). It is enough to say that, accepting the allegations in the complaint as true, Osberry was not actively resisting arrest. Thus, Osberry has plausibly alleged that the Officers used excessive force in violation of her clearly established constitutional right.

For the same reasons, the Officers' use of force was not objectively reasonable under the circumstances. *See Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015) (relying on *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We have recognized that a "suspect's active resistance . . . marks the line between reasonable and unreasonable tasing." *Hagans*, 695 F.3d at 509. And we have declined to apply qualified immunity in circumstances such as these, where a suspect was pulled out of a vehicle, immediately restrained by officers, and tased shortly thereafter. *See, e.g.*, *Kijowski*, 372 F. App'x at 599; *see also Rainey*, 534 F. App'x at 395–96 (finding that, even though the suspect did not immediately comply with the officer's commands, forcibly removing the

suspect from her car and allowing a canine unit to bite the suspect was unreasonable because she was not a threat or actively resisting arrest); *Mattos v. Agarano*, 661 F.3d 433, 445–46 (9th Cir. 2011) (en banc) (removing pregnant woman from vehicle and tasing her found unreasonable).

Indeed, we could consider the conduct unreasonable even if Officer Slusher did not tase Osberry. *See, e.g.*, *Folks v. Petitt*, 676 F. App'x 567, 572 (6th Cir. 2017) ("[W]hen a suspect is not resisting and not dangerous, it is objectively unreasonable, indeed gratuitous, to forcibly pull him from his car and slam him against it with enough force to cause [injuries]."); *Solovy v. Morabito*, 375 F. App'x 521, 526 (6th Cir. 2010) ("In light of these circumstances, [that plaintiff] posed no apparent safety risk to the public or to the police, [the officer's] use of violent force to remove [plaintiff] from his vehicle was gratuitous and therefore unreasonable.").

But we make no factual findings here. Instead, "when the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007) (brackets, citation, and internal quotation marks omitted). And at this early stage, we must accept Osberry's version of the arrest as true. Thus, Osberry was not actively resisting arrest when the Officers removed her from the vehicle and tased her. The Officers are not entitled to qualified immunity on the excessive force claim.

## C.

To be sure, we are deciding only that the Officers are not entitled to qualified immunity on a motion under Rule 12. This is an important point. At the pleadings stage, we must decide whether the complaint states a plausible claim that the Officers violated Osberry's clearly

established constitutional rights. *Courtright*, 839 F.3d at 518. Considering only the complaint, this is an easy case: the Officers violated Osberry's rights when they forcibly removed her from the vehicle (with no probable cause to do so), threw her against the vehicle, and applied a taser to her stomach (even though she was not resisting arrest).

But Osberry's complaint does not necessarily tell the full story. And if we consider the Officers' answer, this case potentially becomes more complicated because Osberry drove into the middle of "an active crime scene that involved a barricaded subject who was potentially dangerous." (Answer, R. 4 ¶¶ 9–10.) In other words, Osberry's clearly established rights—and the reasonableness of the Officers' conduct—may be tougher to determine if the Officers were actually dealing with an active crime scene and a dangerous, barricaded subject. At summary judgment, the Officers can establish these facts and will be free to raise the same argument.[3]

## V.

*Osberry's Monell claim.* Osberry's complaint also contains a claim that Chief Martin is responsible for the Officers' conduct. To raise such a claim, Osberry "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*,

---

[3] We note that even if we accepted the Officers' version of the arrest as true, the existence of an active crime scene may not be enough to support qualified immunity. Our cases suggest that an unlawful-arrest claim is not treated differently simply because the arrest occurred within an active crime scene. *See, e.g.*, *Harris v. Bornhorst*, 513 F.3d 503, 515 (6th Cir. 2008) (collecting cases) ("[I]t is well-established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest."); *D.D.*, 645 F. App'x at 420 (denying qualified immunity for unlawful arrest claim even after a fistfight broke out and the police officers had made an "Officer Needs Assistance" call). Said another way, the Officers had "fair warning" that arresting Osberry without probable cause was unlawful *even if* she was present at a crime scene and did not immediately comply with the Officers' orders to leave. *See, e.g.*, *Rainey*, 534 F. App'x at 399.

735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Osberry can establish an illegal policy or custom by showing one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). In contrast, Osberry cannot sue Chief Martin for an injury inflicted solely by the Officers. *Id.* (quoting *Monell*, 436 U.S. at 694).

The district court analyzed Osberry's claim under the third option, as a "failure to train" claim. This requires Osberry to plead "(1) a clear and persistent pattern of illegal activity, (2) which the City knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the City's custom was the cause of the deprivation of her constitutional rights." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (citation, brackets, and internal quotation marks omitted). In other words, Osberry must allege that Chief Martin ignored a "clear and persistent pattern of misconduct" that should have prompted corrective training for the Officers. *See id.* (citation marks omitted). For this type of *Monell* claim, the municipal liability arises from the history of misconduct that created "notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478.

For example, when a prisoner brought a failure to train claim, we recognized that there was sufficient evidence of prior instances of misconduct where "at least 14 other paraplegics had received similar deplorable treatment" as the plaintiff. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241,

21

1248 (6th Cir. 1989). With these 14 prior incidents, we held that "it is fair to say that the need for more adequate supervision was so obvious and the likelihood that the inadequacy would result in the violation of constitutional rights was so great that the County as an entity can be held liable here for the extent of [plaintiff's] determined damages." *Id.*

But in contrast, we recognized that a county's knowledge of only three prior instances could not establish notice of habitually unconstitutional conduct in support of a failure to train claim. *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014). Similarly, previous cases cannot support a failure to train claim if the prior instances are not factually similar to the conduct as issue. *See Connick v. Thompson*, 563 U.S. 51, 62–63 (2011).

This is a close call. Osberry alleges that the Officers used the same unlawful tactics here as they used in six specific cases ranging from 2012 to 2017. We do not know the facts or circumstances of these cases, but the district court inferred that these prior instances could establish a pattern of misconduct, so it granted Osberry's request to amend her complaint to add these allegations about prior instances. And the Officers concede that the amended complaint is sufficient: "Osberry has not alleged any prior similar constitutional violations *in her original complaint*." (Appellants' Br. at 27 (emphasis added).) They do not challenge the amended complaint. Thus, despite our skepticism, if we accept Osberry's allegations as true, she sufficiently pleaded a failure to train claim.

This does not end our inquiry into Osberry's *Monell* claim. Even though the district court analyzed Osberry's claim as a failure to train claim, the allegations in her amended complaint perhaps fit best within the first option—the classic *Monell* case that an illegal, official policy

22

existed. Under this theory, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Here, according to Osberry, Chief Martin affirmatively taught the Officers to:

> (1) yell out "stop resisting" and "stop obstructing" to imply that all defendants whom they are attacking or manhandling are resisting arrest and/or obstructing official business (Am. Compl., R. 13 ¶ 21);
>
> (2) include a resisting arrest charge in any criminal complaint against any citizen who is injured during an arrest or search (*id.* ¶ 22); and
>
> (3) overwhelm and intimidate suspects, regardless of the level of probable cause, and to over respond to and escalate casual interactions with citizens to allow officers to use excessive and abusive force (*id.* ¶ 24).

Looking at these allegations, Osberry's *Monell* claim seems more about the affirmative policies of Chief Martin—how he taught and instructed the Officers to perform their duties—and less about topics left out of the Officers' training.

To be sure, these conclusory allegations, without more, may be insufficient to survive a motion to dismiss. *See, e.g.*, *Brown v. Cuyahoga Cty.*, 517 F. App'x 431, 436 (6th Cir. 2013); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). A broad assertion that an unconstitutional policy exists "is nothing more than a bare recitation of legal standards." *Brown*, 517 F. App'x at 436. Osberry, however, provides more detailed allegations in her amended complaint—the six cases from 2012 to 2017 where the Officers employed Chief Martin's unlawful tactics. (Am. Compl., R. 13 ¶ 25.) This factual allegation nudges Osberry's *Monell* claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. And while this type of a *Monell* claim is also a

close call, it is at least plausible that Chief Martin's affirmative policies caused this pattern of misconduct.

In sum, Osberry has sufficiently pleaded a viable *Monell* claim under either theory. But which theory Osberry ultimately pursues (or which theory can survive summary judgment) may largely depend on discovery and whether any evidence suggests that Chief Martin implemented an illegal, official policy—or alternatively, that Chief Martin ignored a pattern of misconduct that should have prompted corrective training. We need not answer that question now. The district court correctly denied the Officers' motion to dismiss the *Monell* claim.

## VI.

*Osberry's state law assault claim.* Finally, Osberry's complaint contains an assault claim against the Officers. "If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery." *D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (citation omitted). But under Ohio law, an on-duty police officer is immune from liability unless he (a) acts manifestly outside the scope of his employment or official responsibilities, or (b) acts with malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). Osberry does not allege that the Officers acted outside the scope of their employment.

As for the Officers' intent, we have explained that "evidence of 'gratuitous' force for purposes of an excessive force claim is 'sufficient to establish a genuine issue of material fact as to whether [the defendant] acted maliciously or in bad faith in striking and arresting [the plaintiff].'" *Folks*, 676 F. App'x at 572 (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 610

24

(6th Cir. 2006) (applying Ohio Rev. Code Ann. § 2744.03(A)(6)(b))). And an officer uses gratuitous force by "forcibly pulling a compliant, non-resisting suspect from [her] car and slamming [her] against it with enough force to cause [injuries]." *Id.*

Thus, Osberry has plausibly alleged that the Officers acted with malice or bad faith when they forcibly removed a compliant, non-resisting Osberry from her vehicle, slammed her against it, and tased her in the stomach. This gratuitous use of force overcomes Ohio's statutory immunity. The district court correctly denied the Officers' motion to dismiss Obserry's assault claim.

## VII.

The case remains in the beginning stages of litigation. There has been no discovery, and the parties present conflicting characterizations of Osberry's arrest. But for now, accepting Osberry's version of the arrest and the allegations in her complaint as true, she has sufficiently pleaded claims for unlawful arrest, excessive force, assault, and a *Monell* claim. Thus, we affirm the decision of the district court.